JUNE TERM, 1853.                 475

Glenn vs. The Chesapeake Bank, Alexander, et al.

---

## JOHN GLENN vs. THE CHESAPEAKE BANK, THOS. S. ALEXANDER, and others.

The act of 1842, ch. 288, providing that appeals "then pending, or thereafter to be depending," should not be dismissed, by reason of the record not being transmitted in time, if it appear to the court that the delay was occasioned by the neglect of the clerk, "and without default of the party," applies to appeals in insolvency cases, granted by the act of 1849, ch. 88.

Two orders were passed in an insolvent case, the first on the 4th of November 1852, and the last on the 5th of January 1853, on which last day an appeal was prayed from both, but the record was not filed in the Court of Appeals until the 18th of May 1853. HELD:

That the appeal from the first order is too late, not having been taken within time, as required by the act of 1849, ch. 88, but the delay as to the transmission of the record being without default of the appellant, the appeal from the last order is properly before the court.

APPEAL from the Circuit Court for Prince Georges county.

The appeal in this case was taken from two orders of the court below, passed in the matter of the insolvent application

of Robert Ghiselin. A motion was made by Thomas S. Alexander, one of the appellees, to dismiss the appeal, upon the grounds stated in the opinion of this court, in which also all the facts necessary for an understanding of the question decided on this motion are fully set forth.

The motion was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Thos. S. Alexander* for the motion.

Prior to the passage of the act of 1849, ch. 88, no appeal would lie in such a case as this. *Carter and Wife, vs. Dennison,* 7 *Gill,* 157. This act gives the right of appeal to any party aggrieved by any judgment, decree, decision or order of any county court passed in any case of insolvency; "*provided* such appeal shall be entered within *thirty days,* and a certified copy of the record of such case or proceeding be transmitted to said appellate court, within *sixty days* from the date of such judgment, decree, decision or order." The appeal therefore, so far as it relates to the order of the 4th of November 1852, is clearly too late, not having been taken within *thirty days,* nor the record transmitted within *sixty days.*

The motion must prevail also as to the appeal from the order of the 25th of January 1853, because, though the appeal was taken in time, yet the record was not transmitted to this court within the sixty days, as required by the act of 1849, ch. 88. The act of 1842, ch. 288, provides, that the appeal shall be entertained, "although the transcript or certified copy of the record shall not have been transmitted within the time required by law, if it shall appear to the said Court of Appeals that such delay, in transmitting of the transcript of the record, was occasioned by the neglect or omission of the clerk, and without default of the party." This act requires that it should be made to appear *affirmatively* to this court, that the delay was occasioned by the neglect of the clerk and without default of the party, which is not shown in this case. Besides this

act does not apply, because the act of 1849, ch. 88, passed subsequently, was a repeal, *pro tanto*, of the act of 1842, ch. 288. *Wright vs. Wright*, 2 *Md. Rep.*, 429.

*Reverdy Johnson* against the motion.

It is very clear that there is no ground for the dismissal of the appeal from the order of the 25th of January 1853. The case is covered by the act of 1842, ch. 288, and the construction placed upon it in the case of *Harmon's Ex'crs, vs. Robey*, 9 *Gill*, 440, where the court say, "upon an inspection of the record we find it to state, that an appeal was duly taken at the time the judgment was rendered, and we find in it nothing to indicate a default on the part of the appellant. We therefore think the case protected by the act of 1842, ch. 288, and overrule the motion to dismiss the appeal." Here the appeal was taken the day the order was passed, and there is nothing indicating default on our part. It would have been impossible to have brought this immense record, of three hundred and ninety-eight closely written pages, up sooner. The only other question then is, whether the act of 1842, ch. 288, is *prospective* or not? This is clear upon the words of the act itself; it says, "in any case now pending, or *hereafter to be depending*, in the Court of Appeals," &c. A subsequent law giving the right of appeal, of course gave it subject to existing laws regulating such right. See also 11 *G. & J.*, 456, *Farmers Bank vs. Mackall*.

*Thos. G. Pratt* on the same side, further insisted, that the party making this motion did not occupy a position which entitles him to make it as against Glenn, the appellant. His claim was settled by the decision in 5 *Gill*, 187, and it was his duty to appeal, if he found it necessary to protect his *assignors*. Again, the order of the 4th of November 1852, does not ratify the accounts so far as Glenn's claim is concerned; it does not direct payment, but refers the case again to the auditor, and expressly says the fund cannot be distributed at present. The last order is the only one that directs

distribution, and the appeal from it therefore brings up the whole case.

LE GRAND, C. J., delivered the opinion of this court.

The appeal in this case is from two orders passed by the circuit court, one on the 4th day of November 1852, and the other on the 5th day of January 1853. The appeal, it is agreed by counsel, was taken on the day of the last order. The record was not filed in this court until the 18th day of May 1853, being more than sixty days after the date of the last order.

In this state of case a motion has been made to dismiss the appeal, on the ground that the appeal from the first order was not prayed in time, nor the record sent up to this court within the time specified in the act of 1849, chapter 88, which is the only act authorising appeals from orders and decrees passed in cases of insolvency.

We think the appeal, so far as the order of the 5th day of January 1853 is concerned, is properly before us. We are of opinion the act of 1842, chapter 288, ought to be viewed in connection with the act of 1849, chapter 88. The act of 1842 provides, that in no case then pending, or thereafter to be depending, in the Court of Appeals, shall any appeal be dismissed, because the transcript or certified copy of the record shall not have been transmitted within the time required by law, if it appear to the court that such delay in transmitting the record was occasioned by the neglect or omission of the clerk, and without default of the party.

In the case now before us, so far as the order of the 5th January 1853 is involved, the appellant appears to have done all that it was in his power to do. It is conceded and agreed, that he prayed an appeal on the very day the order was passed; and, although this court would presume the clerk did his duty if it did not appear *when* the appeal was prayed, (*Farmers Bank vs. Mackall,* 11 *Gill and Johns.,* 456,) yet, when the fact is established, that the appeal was taken in time, and there is no evidence showing the appellant prevented the

record being sent up within the proper time, the inference seems to be inevitable, that the delay is without the default of the appellant.

We are of opinion, however, that the appeal from the order of the 4th day of November 1852, is entirely too late.

The record shows, there were several accounts stated by the auditor and passed upon by the court. Account D distributed the realty; account F the negroes; account G the personal estate, exclusive of negroes, and account E disposes of the sum of $6679, allowed to appellant in account D. These accounts will be found on pages 244, '6 and '8 of the record.

The order of the 4th day of November 1852, one of those appealed from, will be found on page 390 of the record. It ratifies accounts D and F, and directs account E to be restated in accordance with the direction of that order; and further directs distribution of the general personal estate to be suspended, until some disposition shall be made of the suit in chancery referred to by the auditor.

The effect of the order was to *finally* ratify accounts D and F. So far as they are concerned, the appeal of the 5th of January 1853, was too late. Account G has never been finally acted upon, the action of the circuit court being reserved to await the action of the court of chancery. Account E having been restated and finally ratified, the appeal from the order ratifying it is properly before us, but the appeal from the order of the 4th day of November 1852, was not taken within time. The motion, therefore, so far as it has relation to the appeal from the order of the 4th of November 1852, must be sustained, and overruled so far as it refers to the appeal from the order of the 5th day of January 1853.

*Order accordingly.*